**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 240258-U

Order filed September 24, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the Circuit Court |
| | ) | of the 21st Judicial Circuit, |
| DARLENA ERICKSON n/k/a | ) | Kankakee County, Illinois, |
| DARLENA GOMEZ, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | Appeal No. 3-24-0258 |
| and | ) | Circuit No. 16-D-194 |
| | ) | |
| CODY ERICKSON, | ) | Honorable |
| | ) | Scott N. Sliwinski, |
| Respondent-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE DAVENPORT delivered the judgment of the court.
Presiding Justice McDade and Justice Holdridge concurred in the judgment.

_____

**ORDER**

¶ 1        *Held*:  The court's denial of a petition to relocate and modification of parenting time was not against the manifest weight of the evidence. Affirmed.

¶ 2        After the dissolution of their marriage, petitioner, Darlena Gomez, and respondent, Cody Erickson, shared equal parenting time of their minor children. Petitioner moved to modify the parenting agreement and sought leave to relocate the children 75 miles from respondent's residence. The court denied her petition and modified the parenting plan, granting respondent more

parenting time during the school year. On appeal, we vacated the court's judgment and remanded for the court to evaluate the statutory factors in light of the children's best interests, based upon the evidence already presented. *In re Marriage of Erickson*, 2023 IL App (3d) 230269-U, ¶ 13. On remand, the court again denied the petition and modified the parenting plan consistent with its first decision. Petitioner appeals, and we affirm.

¶ 3                                                     I. BACKGROUND

¶ 4        Petitioner and respondent divorced in 2017. They have two children, A.E. (born in 2010) and J.E. (born in 2014). In the allocation judgment, the parties agreed to share all decision-making responsibilities and equal parenting time. Petitioner's parenting time was on Mondays, Tuesdays, and alternate weekends. Respondent's parenting time was on Wednesdays, Thursdays, and alternate weekends. The parties agreed the children would continue to attend their private school, Kankakee Trinity Academy (KTA). Respondent was designated as the primary residential parent for the purposes of education. If the children attended public school, they would attend in the district where respondent resides. The parties also agreed not to relocate more than 50 miles from their current residence, or more than 25 miles if they moved to Kane County (among other counties) without the other parent's agreement or leave of court.

¶ 5        On May 10, 2021, petitioner provided respondent written notice of her desire to relocate from Bourbonnais to St. Charles, approximately 75 miles away. Respondent objected to the relocation. On June 24, 2021, petitioner filed a motion to modify the allocation judgment, seeking leave to relocate and to designate herself as the primary residential parent for educational purposes. Four days later, petitioner moved to a home purchased by her fiancé in St. Charles. She exercised her parenting time in St. Charles, and the children continued to attend KTA. This required A.E. and J.E. to commute 90 minutes to and from school two or three times per week.

2

¶ 6        During the eight-day hearing, the court heard testimony from the children's guardian *ad litem* (GAL), petitioner, respondent, petitioner's mother, respondent's mother, and respondent's wife. The court also interviewed A.E. *in camera*.

¶ 7        Samantha Sweeney served as the GAL in the initial divorce proceedings and was reappointed in 2021. Both A.E. and J.E. told Sweeney they had a stronger bond with petitioner than with respondent. Sweeney noted petitioner wanted the children to attend public school, but respondent wanted them to attend private school. Sweeney compared the public high schools in St. Charles and Bourbonnais and concluded the St. Charles high school would provide better academic opportunities. She did not compare elementary schools or private schools. Sweeney testified A.E. and J.E. had adjusted to petitioner's residence in St. Charles and had also adjusted to respondent's home. There was no evidence showing the children were unable to cope with change. According to Sweeney, parenting time could not stay the same due to the distance between the homes, and the amount of travel time was unsustainable; it was unfair and unhealthy for the children, and someone would have to be a primary parenting time parent. Sweeney opined the children would have a hard time living with respondent if relocation was denied. Thus, Sweeney recommended the court allow relocation and fashion a new parenting plan, and the children attend school in petitioner's school district.

¶ 8        Petitioner testified it would not be in the children's best interests to deny relocation because they would be deprived of the close relationship and emotional bond with her, her fiancé's daughter, and their maternal grandparents. She believed the schools in St. Charles provided better opportunities than KTA. KTA did not provide opportunities for students to have an enriched education. School was a priority, yet she admitted she pulled both A.E. and J.E. out of school early to get to soccer practice on time. She testified that a reduction in respondent's time with the

children would not have an adverse impact on their relationship with respondent because the children did not have a strong emotional connection to him. If relocation was denied, she was concerned respondent would not tell her about the children's scheduled activities. She acknowledged, however, that both she and respondent signed the children up for activities without telling the other parent.

¶ 9     Respondent testified the children have a strong emotional connection with petitioner and a close, loving relationship with both sets of grandparents and his wife, Hayley. His parents were like second parents to the children, and the children liked being with his wife. He testified that A.E. was not doing her homework at petitioner's home, so he spent much of his parenting time catching up on missed assignments. Additionally, petitioner consistently failed to inform him about extracurriculars and signed the children up for activities closer to her home. Respondent also noted A.E. showed a reluctance to spend time with him or talk to him when petitioner was around, which was a new behavior that started after petitioner moved. But A.E. contacted him when she was at petitioner's home. He believed maintaining the children's current lives was in their best interests. He proposed that petitioner move back to Bourbonnais so the parties could keep the original arrangement. He recognized one parent was going to suffer adverse effects whether relocation was granted or denied. If relocation was granted, respondent wanted to be the majority parenting time parent. He was concerned about the children starting in a brand-new community, losing their current community, and getting their homework done. He was also concerned petitioner's work schedule would limit her availability to tend to their children's needs.

¶ 10    Lisa Black Gomez, petitioner's mother, testified she had a very close relationship with A.E. and J.E. She saw them more often now that petitioner lived in St. Charles. She often helped during the parenting time transfers and noted the commute to and from St. Charles and Bourbonnais was

4

very hard on everyone. The children's bond with petitioner was very strong and their bond with respondent was lacking. The children, especially J.E., were upset when leaving St. Charles. When the children left Bourbonnais, they did not hug respondent goodbye. The relationship between respondent and A.E. was very awkward, and A.E. seemed uncomfortable. Lisa did not see a strong, caring bond between them. Hayley and J.E. had a loving relationship, but A.E. did not seem to be comfortable with Hayley. Lisa did not think KTA was challenging enough or meeting the children's needs.

¶ 11        Melody Erickson, respondent's mother, testified she saw the children two days each week and had a very close relationship with them. The children depended on respondent, and he was their rock.

¶ 12        Hayley Erickson, respondent's wife, testified that respondent and A.E. were "like two peas in a pod," and respondent was very intentional about being involved in A.E.'s interests. He had a healthy relationship with A.E., and A.E. felt safe with him. He had a loving relationship with J.E. and practiced dance and tumbling with her. Hayley had not seen any indication that the children were unhappy with her. She let A.E. borrow her clothes, and A.E. talked to her about friends, boys, and school. Hayley admitted she had a closer relationship with J.E. than with A.E. She described a dramatic difference in A.E.'s behavior toward her and respondent when petitioner was present in that A.E. became very standoffish. If it was a day she was with petitioner, A.E. did not want to talk to respondent or Hayley, and it was uncomfortable for A.E. When A.E. was with respondent, she was free to call or text petitioner and respondent never prevented this contact. Hayley believed a reduction in respondent's parenting time would affect respondent's ability to maintain a relationship with the children.

¶ 13    A.E. testified *in camera* that she was 12 years old and in seventh grade. She considered petitioner's house in St. Charles as her home. She felt more welcomed at petitioner's house. She did not get along well with Hayley and did not like her because Hayley was controlling and always wanted to be with A.E. The court asked, "What makes you happiest or what would make you happiest as far as where you'd be spending most of your time?" A.E. answered, "My mom's." If A.E. had a big problem, she would go to petitioner because petitioner listens. Respondent was not very good at listening. A.E. said she wanted to go to school in St. Charles because there were more athletic and educational opportunities, and it was a wealthy area.

¶ 14    In a written order, the court denied petitioner's motion to modify but modified the parenting time schedule as a result of her relocation. The court granted respondent primary parenting time during the school year and granted petitioner primary parenting time during the summer break. During the school year, petitioner's parenting time became the first, second, and fourth weekends of each month. During the summer break, petitioner had parenting time during the week, with respondent having parenting time every other weekend.

¶ 15    Petitioner appealed, and we found the trial court used the incorrect standard when it denied the petition to relocate. *Erickson*, 2023 IL App (3d) 230269-U, ¶ 12. We explained the court improperly focused on maintaining the status quo instead of the children's best interests. *Id.* ¶ 11. Accordingly, we vacated and remanded, ordering the court to evaluate the statutory factors in light of the children's best interests based on the evidence already presented. *Id.* ¶ 13.

¶ 16    On remand, the trial court issued a seven-page written order that was largely identical to its previous order. The court again denied petitioner's petition and modified the parenting plan as it had before. Petitioner appeals.

¶ 17                                II. ANALYSIS

¶ 18         On appeal, petitioner argues the court again used the incorrect standard when it denied her request for leave to relocate from Bourbonnais to St. Charles. In addition, she asserts the court's decision was against the manifest weight of the evidence and was contrary to the children's best interests.

¶ 19                                            A. Good Cause

¶ 20         This is an accelerated appeal filed under Illinois Supreme Court Rule 311(a), which requires this court to issue a decision within 150 days after the notice of appeal is filed, "[e]xcept for good cause shown[.]" Ill. S. Ct. R. 311(a)(5) (eff. July 1, 2018). This appeal was filed on April 11, 2024, thus making our decision due on September 9, 2024. However, petitioner filed one motion for extension of time to file her brief, and respondent filed two motions for extension of time to file his brief. Receiving no objections, we granted those motions, ultimately making petitioner's reply brief due on August 15, 2024. Therefore, we find good cause exists to extend the time for this decision. See *In re B'Yata I.*, 2013 IL App (2d) 130558, ¶ 26.

¶ 21                              B. Best Interests of the Children

¶ 22         "In adjudicating a relocation petition, a trial court's paramount consideration is the best interests of the child." *Scott v. Haritos*, 2022 IL App (1st) 220074, ¶ 45. In our prior order, we found the trial court improperly focused on whether it could maintain the status quo if petitioner was allowed to relocate. *Erickson*, 2023 IL App (3d) 230269-U, ¶ 11. Thus, we directed the trial court to reevaluate whether, based on the evidence already presented, relocation was in the children's best interests. *Id.* ¶ 13.

¶ 23         Petitioner argues the court again used the incorrect standard in ruling on the petition. Specifically, she asserts the court's evaluation of three statutory factors demonstrates the court again focused on maintaining the status quo and not the children's best interests. Petitioner

maintains the court simply removed all references to the incorrect standard from its written order and did not conduct a new evaluation as we directed.

¶ 24 Viewing the court's decision on remand in its entirety, we cannot say the court focused on maintaining the status quo or failed to conduct a new evaluation of the evidence through the lens of the children's best interests. The order specifically states the court considered the statutory factors in accordance with the children's best interests, and the court found relocation was not in the children's best interests. Petitioner merely speculates that, because the new written order was largely similar to the initial written order—with the references to the improper standard removed—the court did not reevaluate the evidence. However, petitioner points to nothing in the record affirmatively demonstrating the court failed to comply with our directive. Absent any affirmative indication otherwise, we cannot conclude the court applied an improper standard.

¶ 25                                    B. Manifest Weight of the Evidence

¶ 26 Petitioner next argues the trial court's denial of her request for relocation was against the manifest weight of the evidence. Specifically, she contends the court failed to consider the greater weight of the evidence regarding (1) the quality of each parent's relationship with the children and (2) whether the court could minimize impairment to the parent-child relationship and fashion a reasonable accommodation of parenting time.

¶ 27 "A determination of the best interests of the child cannot be reduced to a simple bright-line test, but rather must be made on a case-by-case basis, depending, to a great extent, upon the circumstances of each case." *In re Marriage of Eckert*, 119 Ill. 2d 316, 326 (1988). The court must weigh the following factors in determining whether relocation is in a child's best-interest:

"(1) the circumstances and reasons for the intended relocation;

(2) the reasons, if any, why a parent is objecting to the intended relocation;

8

(3) the history and quality of each parent's relationship with the child and specifically whether a parent has substantially failed or refused to exercise the parental responsibilities allocated to him or her under the parenting plan or allocation judgment;

(4) the educational opportunities for the child at the existing location and at the proposed new location;

(5) the presence or absence of extended family at the existing location and at the proposed new location;

(6) the anticipated impact of the relocation on the child;

(7) whether the court will be able to fashion a reasonable allocation of parental responsibilities between all parents if the relocation occurs;

(8) the wishes of the child, taking into account the child's maturity and ability to express reasoned and independent preferences as to relocation;

(9) possible arrangements for the exercise of parental responsibilities appropriate to the parents' resources and circumstances and the developmental level of the child;

(10) minimization of the impairment to a parent-child relationship caused by a parent's relocation; and

(11) any other relevant factors bearing on the child's best interests." 750 ILCS 5/609.2(g) (West 2022).

A parent's relocation constitutes a substantial change in circumstances. 750 ILCS 5/609.2(a) (West 2022). Such relocation may require the court to modify a parenting plan.

9

"[T]he court shall modify a parenting plan or allocation judgment when necessary to serve the child's best interests if the court finds, by a preponderance of the evidence, that on the basis of facts that have arisen since the entry of the existing parenting plan or allocation judgment or were not anticipated therein, a substantial change has occurred in the circumstances of the child or either parent and that a modification is necessary to serve the child's best interests." 750 ILCS 5/610.5(c) (West 2022).

¶ 28 "[B]ecause the adjudication of a relocation petition inherently requires a best interests determination, reviewing courts should not reverse a lower court's decision with respect to such petitions unless it is clearly against the manifest weight of the evidence and it appears that a manifest injustice has occurred." *Kenney v. Strang*, 2023 IL App (1st) 221558, ¶ 33. "A court's decision is against the manifest weight of the evidence only where the opposite conclusion is clearly apparent or where its findings are unreasonable, arbitrary, or not based on the evidence presented." *In re Marriage of Kavchak*, 2018 IL App (2d) 170853, ¶ 65. But we will not reweigh the statutory factors. "It is not the function of this court to reweigh the evidence or assess the credibility of testimony and set aside the trial court's determination merely because a different conclusion could have been drawn from the evidence." *In re P.D.*, 2017 IL App (2d) 170355, ¶ 19.

¶ 29 The trial court's assessment of the quality of each parent's relationship with the children was neutral. It noted, "Both parties have been dedicated and involved in the parenting of the minor children." The GAL reported both children had a closer relationship with petitioner, and A.E. testified she would go to petitioner with a problem before respondent. But the court also noted the lack of communication between petitioner and respondent exacerbated problems involving the children and many issues could have been resolved if the parties put their own wants aside. The

10

court concluded, "The bulk of the evidence presented shows both parents are loving and nurturing. Neither parent has failed to utilize their allotted parenting time with the most minor of exceptions." The court's finding on this factor was not against the manifest weight of the evidence. Although the GAL testified that the children prefer petitioner, she did not suggest that petitioner's parenting style was superior or that her love for the children was greater. The record reflects two parents who care deeply for their children and desire to maintain their relationships with them. Hayley testified that respondent is an involved father. Lisa, petitioner's mother, testified that the children have a strong bond with petitioner, and Melody, respondent's mother, testified that respondent was the children's rock. The court's assessment was not unreasonable.

¶ 30    On remand, the trial court modified its assessment of the factor addressing the "minimization of the impairment to a parent-child relationship caused by a parent's relocation." 750 ILCS 5/609.2(g)(10) (West 2022). It found this factor to be neutral, concluding "[n]either parent acknowledged in their testimony the potential harm to the other's relationship with the children as a result of the outcome of this litigation, or suggested ways to minimize the impact." This is a fair assessment. Each parent was interested in maximizing their own amount of parenting time. If relocation was granted, petitioner sought to have parenting time all week during the school year. She disagreed with the GAL's recommendation that respondent have three weekends per month with the children because it would not encourage, foster, or facilitate her family unit. Respondent wanted to maintain the status quo and make petitioner move closer to Bourbonnais. But if relocation was allowed, he wanted the majority of parenting time. Based on the circumstances, the status quo could not be maintained, and the court needed to fashion a reasonable allocation of parenting time, which it did. "Where the evidence permits multiple reasonable inferences, the reviewing court will accept those inferences that support the court's order." *In re*

11

*Marriage of Bates*, 212 Ill. 2d 489, 516 (2004). The new allocation of parenting time was reasonable, and it was similar to what the GAL recommended, albeit with the roles reversed. The court's finding on this factor was not unreasonable or arbitrary. See *Kimberly R. v. George S.*, 2021 IL App (1st) 201405, ¶ 107.

¶ 31    Petitioner also notes the GAL recommended that petitioner be allowed to relocate and that she be awarded a majority of parenting time. She maintains the court, essentially, decided the case exactly opposite of the GAL's recommendation. However, the trial court is not bound by the GAL's recommendation. *In re Marriage of Virgin*, 2021 IL App (3d) 190650, ¶ 51.

¶ 32    Essentially, petitioner asks this court to reweigh the evidence presented and come to a conclusion different from that reached by the trial court. This we will not do. Moreover, although this is not a matter of the trial court merely tallying factors, we note that seven of the eleven best-interest factors were neutral, favoring neither petitioner nor respondent. This further demonstrates the court's denial of the petition to relocate was not against the manifest weight of the evidence. A.E. and J.E. have two loving and nurturing parents. Because the status quo was no longer feasible or healthy, it was in the best interests of the children to modify the allocation of parenting time. Unfortunately, one parent had to receive less parenting time than desired. Although the outcome was not what petitioner wanted, we cannot say the outcome was wrong. The court attempted to counterbalance respondent's parenting time during the school year by giving petitioner primary parenting time during the summer. Moreover, petitioner's work hours as a schoolteacher required her to delegate her parental duties, specifically parenting time transfers, to her parents. Considering the totality of the factors in determining the children's best interests, the court's ruling was not against the manifest weight of the evidence.

¶ 33                    C. Petitioner's Noncompliance with Notice Requirements

¶ 34    Finally, petitioner argues the trial court unfairly punished her by considering her noncompliance with section 609.2(d)'s notice requirements when it analyzed the statutory factors. The trial court considered her decision to physically relocate to St. Charles without providing proper notice or obtaining court consent to be significant and her actions suggested she put her own needs before her children's needs. She asserts that for the trial court to conclude petitioner was putting her own needs first, the trial court would have to ignore the greater weight of the evidence that established petitioner's motives were valid and that her relocation provided significant economic and noneconomic benefits resulting in an overall enhancement of quality of life for herself and her children.

¶ 35    A parent intending a relocation must provide written notice to the other parent. 750 ILCS 5/609.2(d) (West 2022). Section 609.2(d) provides as follows:

> "The notice must provide at least 60 days' written notice before the relocation unless such notice is impracticable (in which case written notice shall be given at the earliest date practicable) or unless otherwise ordered by the court. At a minimum, the notice must set forth the following:
>
> (1) the intended date of the parent's relocation;
>
> (2) the address of the parent's new residence, if known; and
>
> (3) the length of time the relocation will last, if the relocation is not for an indefinite or permanent period.
>
> The court may consider a parent's failure to comply with the notice requirements of this Section without good cause (i) as a factor in determining whether the parent's relocation is in good faith; and (ii) as a basis for awarding reasonable

attorney's fees and costs resulting from the parent's failure to comply with these provisions." *Id.*

Here, petitioner did not provide written notice at least 60 days before the relocation, and she moved before the intended date listed in her written notice.

¶ 36    The trial court's written order mentions the notice requirements in the background section and in its consideration of "any other relevant factors bearing on the child's best interests." 750 ILCS 5/609.2(g)(11) (West 2022). The court stated, in relevant part,

> "[Petitioner] filed her notice of relocation on May 10, 2021. In her notice, she stated that her intended date of relocation was July 10, 2021. The evidence showed that [petitioner] moved to St. Charles on June 28, 2021. When questioned regarding the relocation date she included in the notice, she stated the July 10, 2021, date was simply used to meet the statutory requirement.
>
> * * *
>
> [Petitioner] testified that she was aware the current agreed parenting order required an agreement between the parties or leave [of] court to relocate. She further testified she gave no consideration to these requirements and proceeded to move to St. Charles. Her blatant disregard for the court order subjected the minor children to an arduous 3-hour commute 2-3 times per week which she herself described as exhausting for the children. [Petitioner] did not transport the children herself but instead enlisted the assistance of her parents. Her willingness to create such an unhealthy situation for the children suggests a parent that puts their own wants before the needs of her children."

14

¶ 37     After reviewing the entire memorandum of decision, the trial court did not unreasonably or improperly consider petitioner's noncompliance with notice requirements. The trial court provided an explanation in the background section, and only analyzed it when considering any other relevant factors bearing on the children's best interests. It was permitted to consider petitioner's noncompliance as a factor in determining whether her relocation was in good faith. The court did not solely rely on her noncompliance as a basis to deny relocation. The court's denial of the petition to relocate was not against the manifest weight of the evidence.

¶ 38                                    III. CONCLUSION

¶ 39     The judgment of the circuit court of Kankakee County is affirmed.

¶ 40     Affirmed.